IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CODY DENARD BEASLEY                    :

                           :

    v.                         :    Civil Action No. DKC 10-0049

                           :

JAMES E. KELLY, et al.                 :

                           :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case is a motion for partial summary judgment filed by Defendants James E. Kelly, George P. Schaweble, and Donnell F. Thomas. (ECF No. 34). The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion will be granted in part and denied in part.

**I.    Background**

    **A.    Factual Background**

The parties recite divergently different accounts of the facts, and both versions will be set forth here.

    **1.    Plaintiff's Version**

On or about October 21, 2008, Plaintiff Cody Beasley had a "verbal dispute" with his wife Eresa Beasley at her Maryland home. (ECF No. 1 ¶ 11). Plaintiff subsequently left the home and, at that time, Mrs. Beasley contacted the police and claimed

that Plaintiff had assaulted her. (*Id.* ¶ 12). Shortly after leaving the home, Plaintiff realized that he had forgotten his cell phone at Mrs. Beasley's home, and he decided to retrieve it. (*Id.* ¶ 13). When he arrived at the home, Plaintiff saw several police officers, including Defendants James E. Kelly, George P. Schaweble, and Donnell F. Thomas, standing outside. (*Id.*). He parked three to four car lengths from Mrs. Beasley's home and exited his vehicle. (ECF No. 40-1, at 19).

Immediately after Plaintiff exited his vehicle, Officer Kelly approached him and instructed Plaintiff to stop, to place his left hand on his head, and to turn around and face the vehicle directly in front of him. (*Id.* at 23, 26). Plaintiff complied with this request, but Officer Kelly nonetheless rushed at him, threw him against the car, and punched him in the face. (*Id.* at 24). Officers Schaweble and Thomas then "rush[ed] over" to Plaintiff and aided Officer Kelly in handcuffing Plaintiff by placing Plaintiff's right arm behind his back. (*Id.* at 29-31). The three officers then "slammed [Plaintiff] towards the car again" and began conducting a search of his pockets – a process that Plaintiff described as "abus[ive]." (*Id.* at 39-41). Throughout the search process, Plaintiff "screamed out" that he was not resisting arrest. (*Id.* at 37).

When the officers had completed their search, Officer Kelly taunted Plaintiff by asking if he "like[d] to beat on [his]

wife," before grabbing him, slamming him face-first against the
pavement, and kicking and punching him repeatedly. (*Id.* at 41-
42). Officer Schaweble held Plaintiff's legs down, using his
knees to strike Plaintiff in the back and sides. (*Id.* at 43-
45). At some point, Officer Schaweble instructed the other
officers to "go get the taser," and Plaintiff again "begged
them" to stop by screaming out "please, I'm not resisting, I'm
not resisting . . . please, stop." (*Id.* at 49).

Although none of the three officers used a taser on
Plaintiff, they subsequently lifted him up and "slammed [him
down] on [his] buttocks." (*Id.* at 49-50). Officer Kelly then
intentionally and repeatedly leaned on Plaintiff's handcuffs and
pinned his hands to the ground, causing Plaintiff to scream out
in pain again. (*Id.* at 51).[1] As a result of these actions,
Plaintiff suffered scrapes on his head, multiple bruises, and
permanent nerve damage in his right hand. (*Id.* at 55-56; ECF
No. 1 ¶ 16). Officers Kelly and Schaweble subsequently
attempted to take Plaintiff to police stations in Hyattsville
and Upper Marlboro, but both stations declined to accept custody

---

[1] Mrs. Beasley's deposition largely supports Plaintiff's
version of events regarding his encounter with the Defendant
officers. Although she did not see the entire incident, she did
see Plaintiff, who was handcuffed at the time, screaming for
help while multiple police officers kicked him and slammed him
against a car. (ECF No. 40-2, Eresa Beasley Dep., at 15-16).
Unlike Plaintiff, however, Mrs. Beasley asserts that she saw the
officers tase Plaintiff. (*Id.* at 16).

of Plaintiff before he received medical attention for his injuries. (ECF No. 1 ¶¶ 18-19).

### 2. Defendants' Version

The Defendant officers recite a different version of events. They begin with Mrs. Beasley's description of her dispute with Plaintiff. According to Mrs. Beasley, the dispute began after the couple's children told her about some inappropriate pictures that they had seen on Plaintiff's cell phone. (ECF No. 34-2, at 9). Plaintiff denied the accusations, and the argument between him and Mrs. Beasley became more "intense," with Mrs. Beasley ultimately requesting that Plaintiff leave her home. (*Id.* at 10). Plaintiff initially exited the home, but as Mrs. Beasley attempted to close the door, Plaintiff pushed against the door to prevent it from closing and reentered. (*Id.*). The couple continued to argue, and Plaintiff "started putting his hands" on Mrs. Beasley and pushing her around the kitchen, causing her feet to slide across the floor. (*Id.* at 11). Mrs. Beasley then called 911 and requested assistance, and Plaintiff left the scene. (*Id.* at 12).

The Defendant officers were dispatched to the home. (ECF No. 34-1, at 3). When they arrived at the scene of this "unknown trouble," they spoke with Mrs. Beasley outside her home. (*Id.* at 12). She told them that a verbal dispute with

Plaintiff had become "a little heated" and that Plaintiff had subsequently "put[] his hands" on her before leaving the home. (ECF No. 34-2, at 12). While the officers were taking notes about the couple's dispute, Plaintiff returned to the home. (*Id.*). Plaintiff exited his vehicle and began approaching the home with his fists clenched and his keys in one hand. (ECF No. 34-3, Thomas Dep., at 15). While walking, Officer Thomas heard him "yelling . . . Why are you doing this? Why did you call the police." (*Id.* at 15-16). Tyhee Allen, one of Mrs. Beasley's neighbors, heard Plaintiff "screaming give me my kids, give me my kids" during this time. (ECF No. 41-3, Allen Dep., at 9). The officers instructed Plaintiff to place both hands on his head, but he did not comply with this request. (ECF No. 34-3, at 16).

Officers Kelly, Schaweble, and Thomas then approached Plaintiff and attempted to arrest him, with Officer Thomas trying to take Plaintiff's keys – "the only weapon" the officers could see – out of his hand. (*Id.* at 17). Plaintiff fought against the officers, and the officers and Plaintiff fell to the ground in a struggle. (*Id.* at 18). During the struggle, Officer Thomas continued to try to remove the keys from Plaintiff's hand, while Officers Kelly and Schaweble attempted "to get [Plaintiff's] hands behind his back or on his head" and complete the arrest process. (*Id.* at 20). Plaintiff kicked at

Officer Schaweble while Officer Schaweble attempted to restrain him. (*Id.* at 21). As a result of these actions, Plaintiff was charged with assault on a police officer, resisting arrest, disorderly conduct, and disturbing the peace. (ECF No. 41, at 4).[2] The prosecutor subsequently decided not to proceed with the charges and placed them on the stet docket. (ECF No. 41-1, at 68).

### B. Procedural Background

On January 8, 2010, Plaintiff filed a complaint against Officers Kelly, Schaweble, and Thomas, as well as against Prince George's County. The complaint alleged six counts against the Defendant officers: false arrest (count I), false imprisonment (count II), negligence (count III), assault (count IV), intentional infliction of emotional distress (count V), and violations of the United States and Maryland Constitutions (count VI). (ECF No. 1). Counts III-VI were also alleged against Prince George's County. (*Id.*).

Plaintiff moved to dismiss voluntarily count III, and the court granted his motion. (ECF Nos. 18-19). Prince George's County subsequently filed a motion to dismiss (ECF No. 4), and a

---

[2] Although not emphasized by the Defendant officers in their briefs, Mr. Allen did note in his deposition that he saw one of the officers at the scene "pick [Plaintiff] up and drop[] him back on the ground" at some point after Plaintiff had been handcuffed, an action that Mr. Allen described as "uncalled for." (ECF No. 41-3, at 8).

motion for bifurcation of the trial and stay of discovery (ECF No. 5). The court rejected the County's argument that the entire case against it should be dismissed based on a misnomer in the complaint, but granted the motion to dismiss counts IV and V on the basis of governmental immunity. (ECF No. 20). The motion for bifurcation and stay of discovery was also granted. (*Id.*). The court entered an initial scheduling order on August 13, 2010, with the deadline for amendment of pleadings set for September 27, 2010. (ECF No. 22). The discovery and motions' deadlines were subsequently extended to March 23, and April 25, 2011, respectively. (ECF No. 30). On April 25, 2011, Officers Kelly, Schaweble, and Thomas moved for partial summary judgment (ECF No. 34), and Plaintiff submitted a memorandum opposing portions of Defendants' motion on July 20, 2011 (ECF No. 40).

## II. Standard of Review

Defendant Officers Kelly, Schaweble, and Thomas have moved for partial summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either

party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

## III. Analysis

Defendant Officers Kelly, Schaweble, and Thomas have moved for partial summary judgment in the following ways: (1) summary judgment in favor of all officers on Plaintiff's false arrest, false imprisonment, and intentional infliction of emotional distress claims, and (2) summary judgment in favor of Officer Thomas on Plaintiff's assault and excessive force claims. (ECF

No. 34-1).   In his opposition, Plaintiff concedes, albeit
inartfully, to the entry of judgment in favor of all officers on
the intentional infliction of emotional distress claim and in
favor of Officer Thomas on the assault claim.  (ECF No. 40, at
1).[3]  The remaining claims will be evaluated in turn.

### A.  Summary Judgment Will Be Denied on Plaintiff's False Arrest and False Imprisonment Claims

Officers Kelly, Schaweble, and Thomas assert that they are
entitled to summary judgment on Plaintiff's false arrest and
false imprisonment claims for two reasons.  First, they contend
that Plaintiff's domestic dispute with Mrs. Beasley provided the
"legal authority and justification to arrest . . . Plaintiff for
the assault on Mrs. Beasley."  (ECF No. 34-1, at 6).  Second,
they maintain that Plaintiff disturbed the peace by yelling as
he approached Mrs. Beasley's home, thereby providing an
additional ground for his arrest.  (ECF No. 41, at 4).  In
response, Plaintiff argues that the domestic dispute could not
have served as the basis for his arrest because he was never
charged for that incident.  (ECF No. 40, at 4).  He further

---

[3] Plaintiff states in his opposition that he "concedes to
the dismissal" of these claims, and he does not request leave to
amend.  (ECF No. 40, at 1).  Indeed, as to the claim for
intentional infliction of emotional distress, Plaintiff
explicitly characterizes that claim as "factually unsupported."
(*Id.*).  These statements, made nearly ten months after the time
for amendment of pleadings had passed, will be construed as
concessions to the entry of judgment against Plaintiff, and the
Defendant officers' motion on these two claims will be granted.

asserts that the Defendant officers did not observe him committing any other criminal offense, thereby depriving them of legal authority to arrest him. (*Id.* at 5).

In Maryland, "[t]he elements of false arrest and false imprisonment are identical." *Heron v. Strader*, 361 Md. 258, 264 (2000). Both torts require a plaintiff to demonstrate that another person deprived him of his liberty without consent and without legal justification. *Id.* The Court of Appeals of Maryland has explained the concept of "legal justification" as follows:

> When the cases speak of legal justification we read this as equivalent to legal authority. . . . Whatever technical distinction there may be between an "arrest" and a "detention" the test whether legal justification existed in a particular case has been judged by the principles applicable to the law of arrest.

> Thus, while the presence or absence of probable cause to believe that a crime was committed may be pertinent in some cases with regard to the lawfulness of the arrest, the actual element of the tort of false imprisonment is legal justification rather than probable cause. To the extent that the lawfulness of an arrest does not turn upon probable cause under Maryland law, probable cause will not be determinative of the legal justification issue in a false imprisonment action based on that arrest.

> An arrest made under a warrant which appears on its face to be legal is legally justified in Maryland, even if, unbeknownst to the arresting police officer, the warrant is in fact improper. . . . With respect to

> warrantless arrests made by police officers
> for offenses other than felonies. . . .
> different considerations apply. This Court
> has regularly held that a warrantless arrest
> by a police officer is legally justified
> only to the extent that a misdemeanor was
> actually committed in a police officer's
> view or presence. . . . The Court has
> consistently held that probable cause is not
> a defense in an action for false
> imprisonment based upon a police officer's
> warrantless arrest for the commission of a
> non-felony offense . . . .

*Ashton v. Brown*, 339 Md. 70, 120-21 (1995) (internal quotation marks and citations omitted). Such legal justification must exist at the time that the deprivation of liberty occurs, and it does not turn on developments subsequent to the deprivation of liberty. *Cf. Collins v. State*, 322 Md. 675, 679 (1991) (explaining that the legality of a warrantless arrest is evaluated at the time of arrest).

It is well-established that the act of arrest constitutes a deprivation of liberty for purposes of evaluating a false arrest/imprisonment claim. *State v. Dett*, 391 Md. 81, 94 (2006). Maryland courts have long defined an arrest to include the following: "the taking, seizing, or detaining of the person of another (1) by touching or putting hands on him; (2) or by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest." *Id.* (quoting *Bouldin v. State*, 276 Md. 511, 515-16 (1976)); *see Elliott v. State*, 417 Md. 413, 423, 429

(2010) (reasoning that a *de facto* arrest had occurred where four police officers identified themselves as police, ordered suspects to place their hands in the air, and subsequently handcuffed the suspects and forced them to the ground); *Bailey v. State*, 412 Md. 349, 371-72 (2010) (noting that "a display of force by a police officer, such as putting a person in handcuffs, is considered an arrest," and explaining that a uniformed police officer's physical restraint and search of a suspect constituted an arrest (internal quotation marks and citations omitted)); *Grier v. State*, 351 Md. 241, 252 (1998) (finding that an arrest had occurred when two police officers physically restrained a defendant and placed him on the ground).

Pursuant to this definition, the act of arrest – and therefore the liberty deprivation to which Plaintiff did not consent – occurred no later than the time that Officer Kelly allegedly slammed Plaintiff against the car and placed handcuffs on him, with Officer Schaweble and Thomas's aid. Indeed, through these actions, the officers not only seized Plaintiff by touching him, but also acted in a manner indicating their intent to take Plaintiff into custody and subject him to their control. At no point in their memoranda do the Defendant officers set forth any argument contesting such a conclusion.

To obtain judgment in their favor, the Defendant officers thus must show that, as a matter of law, they had legal

justification for Plaintiff's arrest prior to the act of arrest. The officers initially rely on Plaintiff's involvement in the domestic dispute to justify his arrest, and Plaintiff challenges this contention because he was never charged for a crime related to that dispute. As an initial matter, Plaintiff's attempt to undercut the alleged legal authority for his arrest simply because he did not face charges for that dispute must fail. It is axiomatic that the validity of an arrest does not turn on a later charge or conviction for the arrested crime. *See Devenpeck v. Alford*, 543 U.S. 146, 153-56 (2004); *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *Jackson v. Parker*, 627 F.3d 634, 639-40 (7th Cir. 2010). Therefore, even though Plaintiff never faced charges for the domestic dispute, if the Defendant officers had legal authority to arrest him for his involvement in that dispute, summary judgment must be granted in their favor as to Plaintiff's false arrest and false imprisonment claims.

As noted above, legal justification for false arrest and false imprisonment claims in Maryland turns on the law of arrest. *Ashton*, 339 Md. at 120-21. Police officers in Maryland have statutory authority to arrest a person for committing a felony or misdemeanor in their presence, for committing a limited number of misdemeanor crimes outside their presence, and for committing any felony outside their presence if they have probable cause that the person committed the felony. Md. Code

Ann., Crim. Proc., §§ 2-202 *et seq.* It is undisputed that the domestic dispute at issue here occurred prior to the Defendant officers' arrival at Mrs. Beasley's home.

There are two statutory sections of the Maryland Code that the Defendant officers may invoke to attempt to support Plaintiff's arrest based on the domestic dispute. The first is Section 2-204 of the Maryland Criminal Procedure Code, which permits police officers to make warrantless arrests for domestic abuse in specified circumstances. Asserting that section 2-204 permits a "police officer without a warrant . . . to arrest a person for domestic abuse if a report to the police is made within 48 hours of the alleged incident," the Defendant officers maintain that their interview with Mrs. Beasley clearly satisfied this statutory section, thereby enabling them to arrest Plaintiff. Their statement, however, misconstrues section 2-204 and ignores the statutory requirements that must be satisfied before police officers may arrest a person for domestic abuse. This section provides that warrantless arrests for misdemeanor domestic abuse are permissible only in the following situation:

> (1) the police officer has probable cause to believe that:
> (i)  the person battered the person's spouse or another person with whom the person resides;
> (ii) there is evidence of physical injury; and

> > (iii) unless the person is arrested immediately, the person: 1. may not be apprehended; 2. may cause physical injury or property damage to another; or 3. may tamper with, dispose of, or destroy evidence; and
> (2) a report to the police was made within 48 hours of the alleged incident.

Md. Code Ann., Crim. Proc., § 2-204. Maryland courts find probable cause to exist "where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been . . . committed by the person to be arrested." *Elliott*, 417 Md. at 431. To make this showing, the officers must identify "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[] the intrusion." *Bailey*, 412 Md. at 375.

In the present case, assuming *arguendo* that Mrs. Beasley made a timely report to the police and that the Defendant officers had probable cause to believe Plaintiff had battered her and needed to be apprehended,[4] the record is devoid of

---

[4] Even this proposition is doubtful given the lack of evidence regarding what the Defendant officers, as opposed to the 911 dispatcher, were told about the dispute between Plaintiff and Mrs. Beasley. Indeed, the officers concede that they were not aware of the discussion that had occurred between Mrs. Beasley and the dispatcher, stating that they arrived at

information demonstrating probable cause that evidence of physical injury existed. Mrs. Beasley's deposition states that Plaintiff pushed her, causing her to slide around the kitchen floor because she was wearing heels, but it neither mentions any physical injury resulting from this altercation nor suggests that any such injury was visible to the Defendant officers. Indeed, Mrs. Beasley states only that she told the officers that her argument with Plaintiff had become "a little heated" and that Plaintiff had "put[] his hands" on her. (ECF No. 34-2, at 12). Officer Thomas's deposition similarly contains no information demonstrating that Mrs. Beasley suffered any physical injury during the dispute. The Defendant officers thus cannot rely upon section 2-204 as legal justification for Plaintiff's arrest because they have set forth no specific, articulable facts from which evidence of physical injury could reasonably be inferred.

The second statutory section relevant to Plaintiff's arrest based on the domestic dispute is Section 3-202 of the Maryland Criminal Law Code. Here, the officers would have to maintain that they had probable cause to believe that Plaintiff had committed a felony assault against Mrs. Beasley before they arrived at the home. Once again, the officers fail to make this

---

her home in response to an "unknown trouble." (ECF No. 34-1, at 3).

showing. Maryland law defines felony assault narrowly, and this definition includes only assaults that cause or attempt to cause serious physical injury and assaults with a firearm.[5] The record undisputedly indicates that no firearm was involved in the domestic dispute between Plaintiff and Mrs. Beasley, and the facts simply do not support the conclusion that serious physical injury could have resulted when Plaintiff pushed his wife in the kitchen. Indeed, given that the officers responded to an "unknown trouble," (ECF No. 34-2, at 3), it appears that the only evidence of *any* physical contact between Plaintiff and Mrs. Beasley was Mrs. Beasley's statement to the officers that Plaintiff had "put[] his hands" on her. (*Id.* at 12). This statement simply was not enough to provide the Defendant officers with probable cause to arrest Plaintiff for felony assault. *Cf. Lee v. O'Malley*, No. WDQ-05-0897, 2007 WL 5272026, at *2-3 (D.Md. June 25, 2007) (finding probable cause to arrest a suspect for felony assault where the victim, who was visibly injured, told police that the suspect regularly hit her, had severely beaten her earlier that week, and that she feared for

---

[5] The statutory definition of assault encompasses the common law crimes of assault and battery. Md. Code Ann., Crim. Law, § 3-201(b). "Serious physical injury" means injury creating a substantial risk of death or causing permanent or long-term disfigurement or loss/impairment of the function of a bodily member or organ. *Id.* § 3-201(c).

her life); *Abrams v. Balt. Cnty.*, No. RDB 04-530, 2006 WL 508093, at *1, 7 (D.Md. Feb. 27, 2006) (concluding that police officers had probable cause to arrest a suspect for felony assault where a witness called 911 to report that a man was kicking a woman and officers arrived at the scene to find the woman lying on the sidewalk and the suspect speeding away).

The only remaining legal justification asserted by the officers for Plaintiff's arrest is disturbance of the peace, a misdemeanor that the officers contend occurred in their presence and for which Plaintiff was subsequently charged. This alleged justification, however, also fails based on the facts construed in the light most favorable to Plaintiff. A person may disturb the peace by, among other things, "fail[ing] to obey a reasonable and lawful order" from a police officer or "making an unreasonably loud noise" in a public place. Md. Code Ann., Crim. Law, § 10-201(c)(3), (5).[6] No probable cause would exist to arrest Plaintiff for disturbing the peace at the moment of arrest because, according to Plaintiff, the officers arrested him while he was complying with Officer Kelly's order to place his left hand on his head and before he had a chance to make any

---

[6] In Maryland, the crime of disturbing the peace includes the related crime of disorderly conduct. *Id.*

noise at all.[7] According to Plaintiff's deposition, he uttered

his first words – "scream[ing] out that [he] was not resisting"

– only after the officers had completed the act of arrest.

Because the Defendant officers have not shown legal

justification for Plaintiff's arrest, as a matter of law,

summary judgment on this claim will be denied.

   **B.   Summary Judgment in Officer Thomas's Favor on
          Plaintiff's Excessive Force Claim Will Be Denied**

Officer Thomas also moves for summary judgment as to

Plaintiff's excessive force claim in count VI of the complaint.[8]

---

[7] Although not asserted by the Defendant officers as a basis
for the act of arrest, a similar result must also obtain
regarding the charges for resisting arrest and assault on a
police officer. According to Plaintiff's version of events, not
only did Plaintiff comply fully with the officers' instructions
during the incident, but the act of arrest occurred *before* the
basis of such charges could have arisen.

[8] Count VI of Plaintiff's complaint alleges violations of
the Fourth, Fifth, and Fourteenth Amendments, with Plaintiff
appearing to assert Fourth Amendment violations for both
excessive force and search/seizure in the absence of probable
cause. (ECF No. 1 ¶¶ 47, 53). While Officer Thomas only
requests summary judgment on count VI "as that claim relates to
any claim of excessive force" in the initial memorandum, he
appears to expand significantly the scope of this argument in
reply to Plaintiff's opposition. Indeed, the reply broadly
states that "summary judgment should be granted as to Count VI
against Defendant Thomas." (ECF No. 41, at 10). Because
Officer Thomas neither asserted nor supported this broad
argument in the memorandum accompanying the motion for partial
summary judgment, the scope of Officer Thomas's argument as to
count VI will be limited to Plaintiff's excessive force claim.
*See Chang-Williams v. Dep't of the Navy*, 766 F.Supp.2d 604, 620
n.16 (D.Md. 2011) ("Typically, courts will not consider an
argument raised for the first time in a reply brief.").

He maintains that his only contact with Plaintiff occurred when Officer Thomas conducted a pat down and search of Plaintiff and attempted to remove Plaintiff's keys from his hands. Under these facts, Officer Thomas contends that he did not violate Plaintiff's Fourth Amendment right to be free from excessive force and, to the extent that he did, qualified immunity protects him against further suit on this claim. (ECF No. 34-1, at 8-11). In response, Plaintiff asserts that Officer Thomas's liability stems from the fact that he merely stood by while Officers Kelly and Schaweble viciously beat Plaintiff after his arrest and search. (ECF No. 40, at 5-6).

At the outset, Plaintiff's contention that Officer Thomas is liable because he stood by and watched the alleged beating must fail. The United States Court of Appeals for the Fourth Circuit has recognized "bystander liability" as an independent cause of action by which a police officer may violate a plaintiff's constitutional right to be free from excessive force when the officer witnesses "a fellow officer's illegal act . . . possesses the power to prevent it . . . and chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203-04 (4th Cir. 2002). Plaintiff, however, neither asserted this claim in his complaint nor ever sought leave to amend his complaint. Indeed, Plaintiff asserts the claim for the first time in his opposition to the Defendant officers' motion for partial summary judgment,

which he filed nearly ten months after the deadline for timely amendment of pleadings. It is well-established that a plaintiff may not amend his complaint through argument in a brief opposing summary judgment. *See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F.Supp.2d 399, 436 (D.Md. 2006) (citing *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)); *cf. Howie v. Prince George's Cnty.*, No. DKC 2006-3465, 2009 WL 2426018, at *5-6 (D.Md. Aug. 5, 2009) (evaluating a claim of bystander liability on summary judgment precisely because the plaintiffs had "[pled] this theory in their amended complaint"). Plaintiff's bystander liability claim against Officer Thomas – the only argument he asserts to avoid summary judgment – thus will not be considered here. For that reason, if Officer Thomas demonstrates that, on Plaintiff's facts, he is entitled to judgment as a matter of law, summary judgment in Officer Thomas's favor on the excessive force claim will be warranted. Officer Thomas ultimately fails to make such a showing.

Officer Thomas's argument in support of his summary judgment request on Plaintiff's excessive force claim is two-pronged. He first asserts that his actions did not amount to excessive force as a matter of law. He then contends, in the alternative, that qualified immunity protects him from suit. The threshold question in a qualified immunity analysis generally overlaps with Officer Thomas's first argument: that

is, the analysis frequently begins with a determination of whether the officer's conduct violated the plaintiff's constitutional rights. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (reasoning that the two-step sequential procedure for qualified immunity, while not mandatory, "is often appropriate . . . [and] often beneficial" to follow). If the court answers this question in the affirmative, the analysis would then proceed to the second step – whether the constitutional right at issue was clearly established at the time of the event. *Id.* at 232.

Claims of excessive force during the arrest process are examined under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). This process requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (citation omitted). Relevant factors in making this determination include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396. The determination is to be made "from the perspective of a reasonable officer on the scene." *Id.*

It is inappropriate for a court to grant summary judgment for an excessive force claim when there are disputes regarding the degree, or existence, of the alleged use of excessive force. *Young v. Prince George's Cnty.*, 355 F.3d 751 (4th Cir. 2004) (finding summary judgment precluded by existence of genuine issues of material fact as to the degree and reasonableness of force used by officer). Such disputes exist in the present case. While Officer Thomas asserts that his only physical contact with Plaintiff occurred when he attempted unsuccessfully to remove Plaintiff's keys from his hand as Plaintiff resisted arrest and when he conducted a brief pat-down and search of Plaintiff's pockets, Plaintiff contends that the contact was both more extensive and more forceful. According to Plaintiff, Officer Thomas's involvement in the arrest process was as follows: Officer Thomas rushed at Plaintiff after Officer Kelly punched him in the face, aiding Officer Kelly in handcuffing Plaintiff before the officers collectively "slammed" him against a car, conducted an "abus[ive]" search, and subsequently "slammed [him down] on [his] buttocks." (ECF No. 40-1, at 39-41, 49-50).[9] Throughout this time, Plaintiff maintains that he complied with the officers' requests and instructions.

---

[9] Although Plaintiff's deposition does not parse the injuries that he received among the officers at the scene, it appears from his statements that he may have suffered bruising

These facts – a single, cooperative suspect confronted by three police officers who slammed him against a car and on the ground – do not indicate that Plaintiff posed any immediate threat to anyone at the time of his arrest, nor do they suggest that Plaintiff resisted arrest.[10]  Indeed, when presented with such facts, courts have previously held summary judgment in favor of defendant police officers on excessive force claims to be improper.  *See Bailey v. Kennedy*, 349 F.3d 731, 743-44 (4th Cir. 2003) (reversing a district court's grant of summary judgment in favor of police officers where the officers kicked

---

as a result of these actions.  The *de minimus* nature of these injuries does not impact the validity of Plaintiff's excessive force claim when construing the facts in the light most favorable to Plaintiff.  *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) ("Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts."); *Bibum v. Prince George's Cnty.*, 85 F.Supp.2d 557, 563 (D.Md. 2000) ("While the degree of injury inflicted may be evidence of the amount of force used in effecting the arrest, and thus the reasonableness of the seizure, it is never determinative of the question whether there has been a constitutional violation." (internal quotation marks and citations omitted)).

[10]  The determination of probable cause (and thus legal justification) to arrest Plaintiff for the misdemeanor assault alleged by Mrs. Beasley under the Fourth Amendment is different than for the state law claims.  Pursuant to Fourth Amendment jurisprudence, police officers may arrest individuals for misdemeanor offenses committed outside their presence, even if state law prohibits arrests in t.  *See Virginia v. Moore*, 553 U.S. 164 (2008) (holding that police officers had not violated the Fourth Amendment when they arrested a motorist for the misdemeanor of driving with a suspended license, even though state law prohibited arrest for that offense).

the plaintiff and pulled him by the arms even though, among other reasons, he posed no immediate threat to the officers and was not resisting arrest at that time); *Howie*, 2009 WL 2426018, at *4 (denying summary judgment on an excessive force claim where the facts indicated that the plaintiff had "fully cooperated" with the police officers' verbal commands). Construing the facts in the light most favorable to Plaintiff, Officer Thomas may have violated Plaintiff's constitutional right to be free from excessive force during and immediately following Plaintiff's arrest. *See id.*

The second prong of the qualified immunity analysis, whether the constitutional right was clearly established at the time of the events at issue, does not aid Officer Thomas in obtaining summary judgment. The key issue here is whether the law, when the events in question occurred, "gave the officials 'fair warning' that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), but the precise actions in question "need not have been previously held unlawful . . . because general statements of the law are not inherently incapable of giving fair and clear warning, and . . . a general

constitutional rule already identified . . . may apply with obvious clarity to the specific conduct in question," *Ridpath*, 447 F.3d at 313. Such is the case in the present action. It has long been established that individuals have a right to be free from excessive force during the course of a seizure. *Graham*, 490 U.S. at 394; *see Turmon v. Jordan*, 405 F.3d 202, 206 (4th Cir. 2005) (finding that the "general right to be free from unreasonable seizures is as old as the Fourth Amendment"). Plaintiff's facts demonstrate that Officer Thomas may have used excessive force in the context of an arrest. Because the constitutional right to be free from excessive force during a seizure was clearly established when these events occurred, if Officer Thomas used excessive force against Plaintiff, qualified immunity will not protect him from suit on this claim.

## IV. Conclusion

For the foregoing reasons, the Defendant officers' motion for partial summary judgment will be granted in part and denied in part. A separate Order will follow.

                                        /s/
                         _____
                         DEBORAH K. CHASANOW
                         United States District Judge